UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON MICHAEL MEYERS,

      Plaintiff,

v.                                            Case No. 4:05-CV-134
                                            Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB).

Plaintiff was born on June 23, 1972 (AR 39).[1] He is a high school graduate (AR 51). Plaintiff alleges that he became disabled on June 18, 1999 (AR 39). He had previous employment as a factory worker, driver, telemarketer, fast food cook, laborer and groundskeeper (AR 57). Plaintiff identified his disabling condition as a bad back and narrowing of the spine (AR 45). After administrative denial of plaintiff's claim, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying these claims on April 29, 2005 (AR 14-19). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

**I. LEGAL STANDARD**

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d

918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. The ALJ found that plaintiff was insured for DIB through September 30, 2003 (AR 18). Following the five steps, the ALJ initially found that plaintiff had not engaged in substantial gainful activity since the alleged

onset date of disability (AR 18). Second, the ALJ found that plaintiff's back disorder and obesity were severe impairments (AR 19). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 19). The ALJ decided at the fourth step that plaintiff had a residual functional capacity (RFC) to perform light work with the following limitations:

> He is unable to push or pull, to climb, to operate foot controls, to operate dangerous machines, to work at dangerous heights, or to work with vibrating tools.

(AR 19). The ALJ found that plaintiff's allegations regarding his limitations are not totally credible (AR 19).

At the fourth step, the ALJ found that plaintiff's past relevant work as a telemarketer and machine operator for assembly did not require the performance of work-related activities precluded by his RFC (AR 19). The ALJ also found that plaintiff's back disorder and obesity do not prevent plaintiff from performing his past relevant work (AR 19). Accordingly, the ALJ determined that plaintiff was not under a "disability" as defined by the Social Security Act and entered a decision denying benefits (AR 19).

## III. ANALYSIS

Plaintiff raises four issues on appeal:

**A.     The ALJ failed to give adequate weight and consideration to the objective medical evidence of record.**

### 1. ALJ's evaluation of the medical record

Plaintiff alleges that he became disabled on June 18, 1999 (AR 39). Since plaintiff's insured status for purposes of receiving DIB expired on September 30, 2003, he cannot be found disabled unless he can establish that a disability existed on or before that date. *See Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984). "Evidence relating to a later time period is only minimally probative." *Jones v. Commissioner of Social Security*, No. 96-2173, 1997 WL 413641 at *1 (6th Cir. July 17, 1997), *citing Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). Such evidence is only considered to the extent it illuminates a claimant's health before the expiration of her insured status. *Jones*, 1997 WL 413641 at *1; *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). Accordingly, the relevant time period for plaintiff's DIB claim is a closed period that began on his alleged onset date of June 18, 1999 and terminated on his last insured date of September 30, 2003. Plaintiff's treatment after his last insured date is considered only to the extent that it illuminates his health as it existed on or before that last insured date.

Plaintiff had a limited medical record during the relevant time period. Plaintiff visited the Prebish Chiropractic Centre on January 7, 1999 for treatment after moving furniture (AR 276). A medical treater at Medservice stated that plaintiff suffered from acute low back pain in February 1, 1999 and from "acute back strain" on June 3, 1999 (AR 280). The ALJ noted that plaintiff was diagnosed with acute back strain in June 1999 (AR 16, 280). Michael Hughes, M.D., a neurosurgeon, treated plaintiff in 1999 (AR 79-87). An MRI from June 2, 1999 indicated that plaintiff had multilevel spinal stenosis secondary to congenitally short pedicles and moderate to severe spinal stenosis secondary to the congenitally short pedicles, posterior element hypertrophy and central and right paracentral disc herniation at L4-5 (AR 85). The records reflect that plaintiff was treated with

two epidural injections (AR 80-81). On September 15, 1999, Dr. Hughes found that plaintiff "has some mild low back pain, full range of motion in his back, straight-leg raise negative and no weakness in his legs" (AR 79). The doctor discharged plaintiff and advised him to "[c]ontinue back exercises" and to "pursue his normal activities" (AR 79).

Plaintiff does not point out any other medical treatment that he received prior to September 30, 2003. Plaintiff filed his application for DIB on March 10, 2003 (AR 41). He was evaluated by DDS physician Jeffrey Schipkey, D.O., on April 3, 2003 for "back and spine problems" (AR 88). At his examination, plaintiff reported: that he had a history of back pain; that he received epidurals; that his pain has progressed to the point that he can no longer put his socks on; and that he has significant pain (AR 90). Plaintiff also reported that he is taking Vicodin and Darvocet that he "gets from a friend" (AR 88). He also told the doctor that his girlfriend has to help him put his socks on, that he has to use a shoehorn to put on his shoes, and that after walking more than 20 feet he has to hang on to countertops and the wall for support (AR 88). Plaintiff reported that has no problem lifting with his upper body, can sit for 10 minutes, stand for 5 minutes and walk for 2 minutes without pain (AR 88).

Dr. Schipkey found that plaintiff had mild paraspinal fullness and spasm and a positive right leg straight leg raising test (AR 90). However, plaintiff's cervical spine and dorsolumbar spine had normal ranges of motion on testing (AR 90). Plaintiff could: get on and off of the examination table with mild difficulty; walk heel to toe with no difficulty; squat with moderate difficulty (i.e., he can only go down approximately 1/3 of the way); hop with mild to moderate difficulty; and, only bend over at the abdomen about 30 degrees (AR 90). Dr. Schipkey found that plaintiff's straight leg raising was positive on the right at 30 degrees and "essentially normal on the left" (AR 90). Plaintiff had full dexterity in his hands with symmetrical reflexes (AR 89-90). Dr.

Schipkey concluded his discussion of plaintiff's back and spine problems stating that "[o]ld records may be helpful" (AR 90).

Plaintiff suffered head injuries when he was beaten on February 14, 2004 (AR 107-08). Plaintiff acknowledges that the closed head injury occurred after his last insured date of September 30, 2003 (AR 15). *Id.* The ALJ noted that plaintiff's post-September 30, 2003 treatment included an MRI in April 2004 (which revealed acquired spinal stenosis at L4-5, central disc protrusion at L5-S1 which touched both S1 roots but did not compress the roots) and a June 2004 examination by Peter Chang, M.D., which indicated that plaintiff had chronic low back pain and a closed head injury with headaches (AR 16).

The ALJ summarized her findings in pertinent part as follows:

> The medical evidence record does not suggest that the claimant has a disabling condition. He was not hospitalized during the relevant period for his back or his obesity, nor did he receive regular care from a physician. None of the claimant's treating physicians has expressed the opinion that he is totally disabled.

(AR 17).

In his brief, plaintiff has identified two additional medical conditions from the relevant time period that affected his ability to work, i.e., osteoarthritis of the right hip identified in a July 13, 1999 MRI and "a well documented history of hypertension." Plaintiff's Brief at 7.[2] Dr. Hughes ordered, and received a copy of, the July 13, 1999 MRI (AR 80, 84). The MRI results indicated that plaintiff had "mild early marginal osteoarthritic spurring at the right hip joint without space narrowing" and was otherwise unremarkable (AR 84). Dr. Hughes apparently concluded that

---

[2] Plaintiff also raises the issues of obesity and myofascial pain syndrome. As previously discussed, the ALJ addressed plaintiff's weight, finding that he suffered from a severe impairment of obesity. Finally, plaintiff's diagnosis of myofascial pain syndrome, made by Bryan Visser, M.D. in January 2005, was made long after his last insured date (AR 325).

7

plaintiff's hip condition was not disabling, because the doctor discharged plaintiff in September 1999 with no limitations (AR 79).

Contrary to plaintiff's statement, the record does not include a "well documented history of high blood pressure." On May 24, 1999, plaintiff reported to Dr. Hughes that he had a history of "[h]igh blood pressure but was told that he did not need to take any medicines now" (AR 82). Plaintiff's statement to Dr. Hughes did not indicate the existence of a chronic problem with hypertension. Dr. Schipkey found that plaintiff had blood pressure of 140/100, but did not conclude that he suffered from hypertension (AR 89-91). Plaintiff points to no other evidence in the record regarding his alleged hypertension or any limitations caused by that condition.

Based on this record, the court concludes that the ALJ properly evaluated the medical evidence.

### 2. ALJ's conclusion that plaintiff can perform light work

Plaintiff contends that the ALJ's determination that he can perform light work is unsupported by the evidence. The court disagrees. The ALJ based this decision on the lack of evidence regarding plaintiff's disabling condition and the State agency physician's RFC determination (AR 17, 93-100). The regulations require the ALJ to consider the opinions of State agency medical or psychological consultants, other program physicians and psychologists, and medical experts. *See* 20 C.F.R. § 404.1527(f). An ALJ is not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. *See* 20 C.F.R. § 404.1527(f)(2)(i).

> However, State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants

8

>       or other program physicians or psychologists as opinion evidence, except for the
>       ultimate determination about whether you are disabled.

*Id.* An ALJ is entitled to rely on the opinions of the state agency physicians who reviewed plaintiff's file. *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). *See also Jones v. Sullivan*, 954 F.2d 125, 129 (3rd Cir. 1991) (the opinion of a non-examining physician may constitute substantial evidence to support the ALJ's decision). Accordingly, the ALJ could rely on the DDS physician's opinion that plaintiff could perform light work.

### 3.     ALJ's duty to develop the record

Next, plaintiff contends that the ALJ failed to develop the record. Plaintiff's contention is without merit. The ALJ has a "special duty" to develop the administrative record and ensure a fair hearing for claimants that are unrepresented by counsel. *See Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986); *Lashley v. Secretary of Health and Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983) (ALJ must scrupulously and conscientiously explore all the relevant facts when adjudicating claims brought by unrepresented claimant). However, the ALJ has no such special duty when a claimant is represented by counsel. *See Trandafir v. Commissioner of Social Security*, No. 00-3634, 2003 WL 245341 at *2 (6th Cir. Jan. 31, 2003) (ALJ does not have a "special, heightened duty to develop the record" when the claimant is represented by counsel).

The ALJ did not have a special duty to develop the record because plaintiff was represented by counsel. Counsel's pre-hearing brief did not indicate the need for any further development of the medical record. Similarly, the ALJ's decision did not reflect the need to develop the record further. Plaintiff did not have an extensive medical record covering the relevant time period. The ALJ is not required to develop a record that does not exist.

### B.     The ALJ's credibility finding is not based on substantial evidence.

Next, plaintiff contends that the ALJ's mis-characterization of plaintiff's testimony had a material impact on her assessment of plaintiff's credibility. Plaintiff's Brief at 13. Defendant admits that the ALJ misconstrued or misquoted a portion of plaintiff's testimony. At the hearing, plaintiff testified as follows:

Q:   How long can you, how far can you walk now?

A:   Well, right now, at Dr. Vissser's office, they had me on a treadmill walking at 2.8 miles an hour for ten minutes. And after that I'm pretty much done. I lay down on the table after than and they stretch my legs out and --

(AR 383). The ALJ mistakenly quoted this testimony as follows, "[t]he claimant testified that he could walk for 2.8 miles in an hour on a treadmill" (AR 17).

This error is not a sufficient basis to require a reversal or remand of the ALJ's decision. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). "When 'remand would be an idle and useless formality,' courts are not required 'to convert judicial review of agency action into a ping-pong game.'" *Kobetic v. Commissioner of Social Security*, No. 03-2136, 2004 WL 2491074 at *2 (6th Cir. Nov. 4, 2004), *quoting NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969).

The ALJ did not place any particular significance on this statement regarding plaintiff's ability to walk, which was included as part of a large paragraph summarizing the medical evidence (AR 17). Plaintiff's ability to walk was not a necessary prerequisite to his past relevant work as a telemarketer, which the vocational expert testified was sedentary unskilled work (AR

398). A sedentary job is defined as one that involves sitting, although occasional standing and walking may be required. *See* 20 C.F.R. § 404.1567(a). Based on this record, the ALJ's error was harmless. A remand would not lead to a different result.

### C. Plaintiff testified as to the side effects of the prescription medications as a factor in his disability.

Next, plaintiff contends that "[t]he ALJ failed to adequately develop the record with respect to his chronic use of numerous prescription medications and testimony from the [p]laintiff as to the severe side effects." Plaintiff's Brief at 14. At the hearing on January 24, 2005, plaintiff testified that he takes Vicodin, Trazodone for sleeping, Midrin for headaches and Neurontin for nerves (AR 382). Plaintiff also testified that he takes the pain killers as needed because he feels "funny in the head" when he takes too many of them (AR 382).

While plaintiff's testimony referred to his condition in 2005, his testimony did not reflect his use of pain killers during the relevant time period. The record reflects little use of pain medication on or before his last insured date of September 30, 2003. While plaintiff reported to Dr. Schipkey that he obtained Vicodin and Darvocet "from a friend" (AR 88), his self-medication is not evidence that he was prescribed pain medication for his back condition.

### D. Lack of access to health care

In his reply brief, plaintiff contends that he should not be prejudiced because he has been unemployed and unable to obtain health care. Assuming that plaintiff was financially unable to obtain medication or treatment from 1999 through 2003, his inability to seek out medical treatment for his back condition does not establish that he was disabled by that condition. "The issue of poverty as legal justification for failure to obtain treatment does not arise unless a claimant is found to be under a disabling condition." *Strong v. Social Security Administration*, 88 Fed. Appx. 841, 846

11

(6th Cir. 2004). As the court stated in *Banks v. Apfel*, 144 F.Supp.2d 752 (E.D. Ky. 2001):

> In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. *Gooch v. Secretary of Health and Human Services*, 833 F.2d 589, 592 (6th Cir.1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, *Hale v. Secretary of Health and Human Services*, 816 F.2d 1078, 1082 (6th Cir.1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir.1990).

*Banks*, 144 F.Supp.2d at 755 -756.

Here, plaintiff has not demonstrated that he was disabled on or before September 30, 2003. Dr. Hughes considered his back injury to be a short term condition and discharged him on September 15, 1999. The other medical evidence, provided by Dr. Schipkey's examination in April 2003, found that plaintiff had normal ranges of motion and suffered from only mild to moderate restrictions. Accordingly, the issue of poverty does not arise. *See Strong*, 88 Fed. Appx. at 846. Furthermore, it is unclear whether plaintiff has a poverty issue that prevented him from obtaining medical care. The court notes that despite being unemployed, plaintiff successfully sought out and obtained medical treatment at a government funded clinic after September 30, 2003 (AR 101-273, 274-75, 325-60, 381-82, 392).[3]

**IV.    Summary**

Plaintiff contends that his back condition has worsened over the years and that the ALJ did not give consideration to the disabilities arising from his closed head injury suffered in 2004. Plaintiff's contentions may well be true. However, the issue at hand is not whether plaintiff was disabled at the time of his administrative hearing in 2005, but whether he suffered from a

---

[3] On July 26, 2004, Dr. Chang made the interesting observation that while plaintiff "has not worked for a few years and [is] unable to work at this time, although he does some side jobs on his own" (AR 341).

12

disability on or before his last insured date of September 30, 2003.  Based on the record before the court, the ALJ properly found that plaintiff is not eligible for DIB because he was not disabled on or before September 30, 2003.[4]

## V.     Recommendation

I  respectfully recommend that the Commissioner's decision be affirmed.


Dated:  December 19, 2006                       /s/ Hugh W. Brenneman, Jr.
                                                Hugh W. Brenneman, Jr.
                                                United States Magistrate Judge




ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[4] On pages 12, 14 and 15 of his brief, plaintiff sets forth additional claims: that the ALJ failed to address his pain limitations to the requisite degree of specificity; that the ALJ's hypothetical must accurately portray plaintiff's physical and mental impairments; and that the ALJ must conduct a more detailed evaluation of the medical testimony and documentation as well as plaintiff's testimony.  These claims are nothing more than statements of legal standards or bald assertions of error. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to  . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Accordingly, the court deems these arguments waived.